*MHN*

FILED
3-25-2010
MAR 2 5 2010

JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 09 CR 330 |
| vs. | ) | Judge Harry D. Leinenweber |
| | ) | |
| JERMAINE SMITH | ) | |

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant JERMAINE SMITH, and his attorney, WILLIAM P. MURPHY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.  The parties to this Agreement have agreed upon the following:

### Charge in This Case

2.      The indictment in this case charges defendant with five counts of bank robbery, in violation of Title 18, United States Code, Sections 2113(a) (Counts 1-5).

3.      Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts Two, Three, and Five of the indictment, which charge defendant with three

separate bank robberies, in violation of Title 18, United States Code, Sections 2113(a). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

### Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charges contained in Counts Two, Three, and Five of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.      With respect to Count Two of the indictment:

On or about March 17, 2008, at Hinsdale, in the Northern District of Illinois, Eastern Division, defendant JERMAINE SMITH, by intimidation, did take from the person and presence of bank employees at Harris Bank, 120 W. Hinsdale Avenue, Hinsdale, Illinois, approximately $263,600 in United States currency belonging to and in the care, custody, control, management, and possession of Harris Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

More specifically, shortly after 6 a.m. on March 17, 2008, SMITH approached an employee of Harris Bank ("Employee A") as Employee A was entering the bank. SMITH was wearing a hooded sweatshirt and a black mask that covered his face up to his nose. SMITH said words to the effect of, "Wait a minute. We are going to go inside. Don't worry. I'm not going to hurt you."

Employee A entered the bank with SMITH, and another bank employee ("Employee B") was already inside. SMITH instructed Employee A and Employee B to open the vault. Employee A and Employee B first took SMITH to a coin vault and opened it for him. The coin vault had coins in it but no currency. When SMITH saw this, SMITH became agitated and asked where the vault with the money was. Employee A and Employee B then led SMITH to the main vault and opened it at his instruction. SMITH then stole $263,600 in cash from the main vault and exited the bank. The deposits of the Harris Bank were insured by the Federal Deposit Insurance Corporation on the day of the robbery.

      b.      With respect to Count Three of the indictment:

On or about October 30, 2008, at Plainfield, in the Northern District of Illinois, Eastern Division, JERMAINE SMITH, by intimidation, did take from the person and presence of bank employees at Harris Bank, 15101 S. Route 59, Plainfield, Illinois, approximately $266,100 in United States currency belonging to and in the care, custody, control, management, and possession of Harris Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

More specifically, at around 6:40 a.m., on October 30, 2008, SMITH approached a Harris Bank employee ("Employee C") from behind as Employee C was entering the bank. SMITH told Employee C to remain calm and demanded money. SMITH was wearing a black hooded sweatshirt, a black jacket, and a scarf covering his mouth.

3

Employee C entered the bank with SMITH. Another bank employee ("Employee D") was already inside the bank. At SMITH's instruction, Employees C and D led SMITH to the vault and opened it for him. SMITH then stole $266,100 from the vault and exited the bank. The deposits of the Harris Bank were insured by the Federal Deposit Insurance Corporation on the day of the robbery.

      c.     With respect to Count Five of the indictment:

On or about April 8, 2009, at Joliet, in the Northern District of Illinois, JERMAINE SMITH did, by intimidation, take from the person and presence of bank employees at Harris Bank, 207 North Midland, Joliet, Illinois, approximately $71,598 in United States currency belonging to and in the care, custody, control, management, and possession of Harris Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

Specifically, prior to April 8, 2009, defendant SMITH and co-defendant Jamar Jones talked about robbing a bank. On or about April 8, 2009, SMITH called Jones on the telephone and said that he was going to take care of business, or words to that effect, which meant that SMITH was going to rob a bank. Jones insisted on going with SMITH to the bank to be a lookout for SMITH. Shortly before 7 a.m. on April 8, 2009, SMITH and Jones met in a Jewel parking lot next to the Harris Bank at 207 North Midland in Joliet, Illinois, for the purpose of robbing the bank. When he arrived at the parking lot, Jones got into the driver's seat of a Honda Accord that SMITH had driven to the Jewel parking lot that morning. Jones then dropped SMITH off behind the Jewel and SMITH walked around a fence towards the

Harris Bank. SMITH was wearing dark clothing, including a black jacket, a gray-hooded sweatshirt, and a dark-colored scarf. SMITH then approached a bank employee ("Employee E") as Employee E was about to enter the bank and said, "If you do what I say, I won't hurt you." He then said "go by the vault" and "open the vault." Employee E followed SMITH's instructions, and SMITH then proceeded to rob the Harris Bank of approximately $71,598 in United States currency. After SMITH robbed the Harris Bank, SMITH returned to the Jewel parking lot, where Jones was waiting for SMITH in the Honda Accord. SMITH got into the Honda Accord with the money, and Jones drove away. The deposits of Harris Bank were insured by the Federal Deposit Insurance Corporation on the day of the robbery.

7.     Defendant, for purposes of computing his sentence under Guideline §1B1.2, stipulates to having committed the following additional offenses:

a.     With respect to Stipulated Offense One:

On or about January 12, 2008, at Hinsdale, in the Northern District of Illinois, Eastern Division, JERMAINE SMITH by intimidation, did take from the person and presence of bank employees at Hinsdale Bank & Trust, 130 West Chestnut, Hinsdale, Illinois, approximately $50,684 in United States currency belonging to and in the care, custody, control, management, and possession of Hinsdale Bank & Trust, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

More specifically, at approximately 6:40 a.m. on January 12, 2008, SMITH ran up to a Hinsdale Bank & Trust employee ("Employee F") as Employee F was entering the bank.

5

SMITH said, "This is a bank robbery. Go in the bank." Employee F asked SMITH if SMITH was serious. SMITH said yes, and grabbed his coat pocket and said, "I have a gun. This is a robbery." Employee F then entered the bank with Smith. SMITH then proceeded to steal $50,684 from the bank, which was primarily from the bank's teller drawers. The deposits of the Hinsdale Bank & Trust were insured by the Federal Deposit Insurance Corporation on the day of the robbery.

      b.      With respect to Stipulated Offense Two:

On or about March 14, 2009, at Romeoville, in the Northern District of Illinois, Eastern Division, JERMAINE SMITH, by intimidation, did take from the person and presence of bank employees at Marquette Bank, 1876 West Airport Road, Romeoville, Illinois, approximately $21,242 in United States currency belonging to and in the care, custody, control, management, and possession of Marquette Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

More specifically, at approximately 6:50 a.m. on March 14, 2009, SMITH entered the Marquette Bank behind a bank employee ("Employee G") and a bank security guard. SMITH told them, "If you cooperate, no one will be hurt." SMITH was wearing dark-colored pants, a sweatshirt, and a mask that partially covered his face. At SMITH's direction, Employee G and the security guard led SMITH to the vault and opened it. SMITH then stole $21,242 from the vault. SMITH told Employee G and the security guard to get

onto the floor, and SMITH exited the bank. The deposits of the Marquette Bank were insured by the Federal Deposit Insurance Corporation on the day of the robbery.

## Maximum Statutory Penalties

8.      Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.      Count Two carries a maximum sentence of 20 years' imprisonment. Count Two also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Two the judge also may impose a term of supervised release of not more than three years.

b.      Count Three carries a maximum sentence of 20 years' imprisonment. Count Three also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Three the judge also may impose a term of supervised release of not more than three years.

c.      Count Five carries a maximum sentence of 20 years' imprisonment. Count Five also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Five the judge also may impose a term of supervised release of not more than three years.

d.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

e.      Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 60 years' imprisonment. In addition, defendant is subject to a total maximum fine of $750,000, a period of supervised release, and special assessments totaling $300.

### Sentencing Guidelines Calculations

9.      Defendant understands that in imposing a sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2009 Guidelines Manual.

b.      **Offense Level Calculations.**

i.      **Count Two:** The base offense level for the charge in Count Two is 20, pursuant to Guideline §2B3.1(a). Pursuant to Guideline §2B3.1(b)(1), defendant's offense level is enhanced by 2 levels because defendant took the property of a financial institution. Pursuant to Guideline §2B3.1(b)(7)(D), defendant's offense level is enhanced

8

by 3 levels because the amount of loss was more than $250,000. Therefore, the adjusted offense level for Count Two is 25.

    ii. **Count Three:** The base offense level for the charge in Count Three is 20, pursuant to Guideline §2B3.1(a). Pursuant to Guideline §2B3.1(b)(1), defendant's offense level is enhanced by 2 levels because defendant took the property of a financial institution. Pursuant to Guideline §2B3.1(b)(7)(D), defendant's offense level is enhanced by 3 levels because the amount of loss was more than $250,000. Therefore, the adjusted offense level for Count Three is 25.

    iii. **Count Five:** The base offense level for the charge in Count Five is 20, pursuant to Guideline §2B3.1(a). Pursuant to Guideline §2B3.1(b)(1), defendant's offense level is enhanced by 2 levels because defendant took the property of a financial institution. Pursuant to Guideline §2B3.1(b)(7)(C), defendant's offense level is enhanced by 2 levels because the amount of loss was more than $50,000. Therefore, the adjusted offense level for Count Five is 24.

    iv. **Stipulated Offense One**: The base offense level for Stipulated Offense One is 20, pursuant to Guideline §2B3.1(a). Pursuant to Guideline §2B3.1(b)(1), defendant's offense level is enhanced by 2 levels because defendant took the property of a financial institution. Pursuant to Guideline §2B3.1(b)(7)(C), defendant's offense level is enhanced by 2 levels because the amount of loss was more than $50,000. Therefore, the adjusted offense level for Stipulated Offense One is 24.

      v.      **Stipulated Offense Two**: The base offense level for the Stipulated Offense Two is 20, pursuant to Guideline §2B3.1(a). Pursuant to Guideline §2B3.1(b)(1), defendant's offense level is enhanced by 2 levels because defendant took the property of a financial institution. Pursuant to Guideline §2B3.1(b)(7)(B), defendant's offense level is enhanced by 1 level because the amount of loss was more than $10,000. Therefore, the adjusted offense level for Stipulated Offense One is 23.

      vi.      Pursuant to Guideline §3D1.2, each of the offenses of conviction and the stipulated offenses are not grouped together and should be treated separately. Pursuant to Guideline §3D1.4(a), the defendant receives one unit for the offense charged in Count Two. Pursuant to Guideline §3D1.4(a), defendant receives four additional units for the offenses charged in Counts Three and Five and Stipulated Offenses One and Two. With a total of 5 units, 4 levels are added under Guideline §3D1.4, which results in a combined offense level of 29.

      vii.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

viii.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.  Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.    **Criminal History Category.**  With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 0 and defendant's criminal history category is I.

d.    **Anticipated Advisory Sentencing Guidelines Range.**  Therefore, based on the facts now known to the government, the anticipated offense level is 26, which, when combined with the anticipated criminal history category of I,  results in an anticipated advisory Sentencing Guidelines range of 63 to 78 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely.  Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or

11

additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.　　Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.　　The government agrees to recommend that the Court impose a sentence of imprisonment within the applicable guidelines range and to make no further recommendation concerning what sentence of imprisonment should be imposed.

12.　　It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as

set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendant, to make full restitution to victims in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing. The parties acknowledge that the full amount of restitution currently owed to the Harris Bank in Hinsdale is $263,600, that the total amount owed to the Harris Bank in Plainfield is $266,100, and that the total amount owed to the Harris Bank in Joliet is $71,598. Defendant also agrees to pay additional restitution, arising from the stipulated offense conduct set forth above, namely, $50,684 to Hinsdale Bank & Trust and $21,242 to Marquette Bank, pursuant to Title 18, United States Code, §§ 3663(a)(3) and 3664.

14.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k) he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15.     Defendant agrees to pay the special assessment of $300 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

## Forfeiture

16.     The indictment charges that defendant shall forfeit to the United States any and all right, title, and interest in property, real and personal, which constitutes and is derived from proceeds traceable to the charged offense. The indictment and bill of particulars specifically identify $78,571 in cash seized on or about April 8, 2009, and assorted jewelry seized on or about April 8, 2009, as proceeds subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C). By entry of a guilty plea to Counts Two, Three, and Five of the indictment, defendant acknowledges that the $78,571 in cash and the assorted jewelry seized on or about April 8, 2009 is subject to forfeiture.

17.     Defendant agrees to forfeiture of the $78,571 and assorted jewelry referenced above, in that this property is subject to forfeiture. Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described funds and property and further agrees to the seizure of these funds and property so that these items may be disposed of according to law. Defendant is unaware of any third party who has an ownership interest in, or claim to, the funds and property subject to forfeiture.

18.     The government agrees that defendant's forfeiture of the $78,571 and assorted jewelry referenced above shall satisfy defendant's forfeiture obligation in this case.

19.     Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

20.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 09 CR 330.

21.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, and considering each count separately, it was persuaded of his guilt beyond a reasonable doubt. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count

16

separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.   At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.   At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.    **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 10 days of the entry of the judgment of conviction.

c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically

17

preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

23. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

24. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

25. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the

Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

26.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the U.S. Attorney's Office.

### Conclusion

27.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

28.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that

in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29.   Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

30.   Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

31.   Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___3/25/10___

_____
PATRICK J. FITZGERALD
United States Attorney

_____
JERMAINE SMITH
Defendant

_____
MATTHEW F. MADDEN
Assistant U.S. Attorney

_____
WILLIAM P. MURPHY
Attorney for Defendant

20